[Crim. No. 3678. Second Dist., Div. Three. Feb. 26, 1943.]

In re Donald Mackay, on Behalf of ETHEL PARKER, on Habeas Corpus.

Donald Mackay for Petitioner.

John F. Dockweiler, District Attorney (Los Angeles), and Jere J. Sullivan, Deputy District Attorney, for Respondent.

SHAW, J. pro tem.—The petitioner is held in custody upon a commitment issued by the Superior Court of Los Angeles County after her conviction therein upon two counts of an information attempting to charge her with forgery. █ She seeks release upon habeas corpus, advancing as a ground therefor the claim that the information does not charge her with any public offense.

No contention is made that the law under which she is held is for any reason invalid. The rule applicable to such a situation is stated in *In re Leach,* (1932) 215 Cal. 536, 547 [12 P.2d 3], as follows: "It is well settled that while the constitutionality of the law under which an indictment is found may be raised on *habeas corpus,* the failure of the indictment to sufficiently allege the offense, or to allege facts sufficient to constitute the offense charged, may not be questioned in such a proceeding. 'The scope of inquiry upon *habeas corpus* into the sufficiency of an indictment or information is limited, for, although the petitioner may be dis-

charged if the pleading totally fails to charge an offense known to the law, if there is attempted to be stated an offense of a kind of which the court assuming to proceed has jurisdiction, the question whether the facts charged are sufficient to constitute an offense of that kind will not be examined into.' (13 Cal.Jur., p. 232.)'' The same rule has been declared in many other cases, including: *In re Bell,* (1942) 19 Cal.2d 488, 508 [122 P.2d 22]; *In re Wilson,* (1925) 196 Cal. 515, 518 [238 P. 359]; *In re Wood,* (1924) 194 Cal. 49, 62 [227 P. 908]; *In re Kavanaugh,* (1919) 180 Cal. 181 [180 P. 533]; *Matter of Ruef,* (1907) 150 Cal. 665 [89 P. 605]; *In re Brown,* (1929) 102 Cal.App. 97, 98 [282 P. 538]; *In re Rissman,* (1927) 87 Cal.App. 176 [261 P. 727]; *In re Williams,* (1925) 73 Cal.App. 485, 490 [238 P. 1044]; *Matter of Clifton,* (1915) 26 Cal.App. 334 [146 P. 1064]. *Matter of Ruef, supra,* is cited with approval in nearly all the later cases, and the court there said: ''We think the true rule is that where an indictment purports or attempts to state an offense of a kind of which the court assuming to proceed has jurisdiction the question whether the facts charged are sufficient to constitute an offense of that kind will not be examined into on *habeas corpus.''* This rule is not applied in its full extent to justice's and other inferior courts (*Ex parte Greenall,* (1908) 153 Cal. 767, 770 [96 P. 804]; *Matter of Ah Sing,* (1909) 156 Cal. 349 [104 P. 448]; *In re Rissman, supra; In re Williams, supra*) but here we have a proceeding in the superior court, to which it does apply.

The statement of the offense charged in an indictment or information ''may be in the words of the enactment describing the offense or declaring the matter to be a public offense, or in any words sufficient to give the accused notice of the offense of which he is accused.'' (Pen. Code, sec. 952.) This is the rule applied even when the sufficiency of the charge is attacked on appeal, where it may be subjected to much more critical examination than can be given it on habeas corpus. (*People* v. *Pierce,* (1939) 14 Cal.2d 639, 646 [96 P.2d 784]; *People* v. *Lavine,* (1931) 115 Cal.App. 289, 296 [1 P.2d 496].)

Section 470 of the Penal Code, defining the offense of forgery, declares that ''Every person who, with intent to defraud . . . counterfeits or forges the seal or handwriting of another; or utters, publishes, passes, or attempts to pass, as true and genuine, any of the above-named false, altered, forged or

counterfeited matters . . . knowing the same to be false, altered, forged, or counterfeited, with intent to prejudice, damage, or defraud any person; . . . is guilty of forgery.'' The section contains also a detailed enumeration and description of many documents, the false making of which, with intent to defraud, is forgery; but since the information before us appears to be founded on the words quoted, we omit the enumeration. The two counts of the information here in question are substantially alike, except for names, dates and other such data, and each charges that the defendant ''with intent then and there to cheat and defraud,'' in one case, a named corporation, and in the other a named corporation and an individual, ''did then and there willfully, unlawfully, fraudulently and feloniously make, forge and counterfeit the handwriting of'' a named person ''to and upon an affidavit of birth and did then and there utter, publish and pass the same, knowing said affidavit of birth to be false, forged and counterfeit, as aforesaid, with intent then and there to cheat and defraud'' the same parties previously named. In each count is set forth a copy of the affidavit referred to therein. This charge is in the exact words of the statute, as far as it relates to the original making of the forged paper, and nearly so as to the uttering of it; and it is undoubtedly sufficient to comply with the habeas corpus rule above stated, and even with the rule on appeal, unless its efficacy is destroyed by the nature of the affidavit which is set up as the subject matter of the forgery. Petitioner claims that it is so destroyed.

Perhaps the force of a charge of forgery might be thus completely overcome, even on habeas corpus, if the paper charged as having been forged were one which could not, by any possibility, operate to defraud anyone; e.g. a purely social letter, or a merely libelous letter (see *People* v. *Wong Sam,* (1897) 117 Cal. 29 [48 P. 972] ; *People* v. *Turner,* (1896) 113 Cal. 278, 280 [45 P. 331]), on the theory that the pleading *totally* failed to charge an offense known to the law. It is not necessary, however, that the forged writing create a valid and legally enforceable obligation in order to constitute the making of it a forgery. (*People* v. *Gayle,* (1927) 202 Cal. 159, 162 [259 P. 750] ; *People* v. *McKenna,* (1938) 11 Cal.2d 327, 332 [79 P.2d 1065] ; *People* v. *Munroe,* (1893) 100 Cal. 664, 668 [35 P. 326, 38 Am.St.Rep. 323, 24 L.R.A. 33].) It is sufficient that it might possibly deceive another and was prepared with intent to deceive and defraud another. (*Peo-*

*ple* v. *Turner, supra,* (1896) 113 Cal.278, 281 [45 P. 331].)
A contract which is void as against public policy may, nevertheless, be the subject of a forgery. (*People* v. *Gayle, supra; People* v. *Munroe, supra; People* v. *Collins,* (1908) 9 Cal. App. 622 [99 P. 1109].) Even a letter which could not have any actual legal effect may be the basis for a charge of forgery. (*People* v. *McKenna, supra,* at p. 333.) A county clerk's certificate to copy of a decree of divorce may also be the subject of a forgery (*Ex parte Finley,* (1884) 66 Cal. 262 [5 P. 222]), and so may a recorder's certificate of the recording of a deed. (*People* v. *Turner, supra.*) ▮ Where the writing alleged to have been forged shows on its face that it might be the means of fraud, no averments of extrinsic facts to show how this could be are necessary. (*Ex parte Finley, supra,* a habeas corpus case; *People* v. *Di Ryana,* (1908) 8 Cal.App. 333, 339 [96 P. 919], where the same rule was stated on appeal.)

▮ In this case the two affidavits charged to have been forged are alike in character. Each purports to state in detail the facts of the date and place of birth and the parentage of a named person. No statute has been cited to us which, at the time of these offenses, would give standing, purpose, or legal effect to such an affidavit, and we have found none. It does not appear that any legal proceeding was pending in which either of the affidavits was or could be used as evidence. In fact, their purpose does not appear at all, except by the general allegation that the petitioner made and uttered them with intent to defraud one person and two corporations, one of which was "engaged in United States of America Defense Work." We cannot say that such an affidavit could not be used to defraud, as charged. The persons whose births were recited in the affidavits appeared therefrom to be males and to have been respectively 36 and 41 years of age at the time of the forgeries. ▮ We may take notice of the fact that males of these ages are usually competent to engage in the making of articles used for defense work. One of the affidavits, according to the information,was forged May 19, 1941, and the other June 10, 1942. ▮ We also take judicial notice of the facts that at these times there were in Los Angeles County, where the forgeries were committed, a large number of factories engaged in making for the United States and other governments a variety of articles used or useful for war and defense purposes, that these factories employed many thou-

sands of men in their work and were rapidly increasing the number of their employees, that they demanded of all applicants for employment proof of United States citizenship and that birth certificates and other similar papers which might be accepted by these factories as proof of such citizenship were in great demand among those seeking employment. In the light of these facts we cannot say that the affidavits in question could not be used to defraud anyone. Indeed, it seems obvious that there are many ways in which they might be so used. The information must therefore be held sufficient, on habeas corpus, to support the commitment of petitioner.

The writ is discharged and the petitioner is remanded to custody.

Desmond, P. J., and Shinn, J., concurred.